# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. GLR-17-0506 |
| | ) | |
| ISABEL FITZGERALD, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## THE UNITED STATES OF AMERICA'S OPPOSITION TO DEFENDANTS FITZGERALD'S AND PANGALLO'S SUPPLEMENTAL MOTIONS TO DISMISS COUNTS ONE THROUGH FOUR OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE BASED UPON THE SUPREME COURT'S DECISION IN *REHAIF v. UNITED STATES* (ECF #s 113 & 118)

ROBERT K. HUR
UNITED STATES ATTORNEY

Jefferson M. Gray
Sean M. Delaney
Assistant U.S. Attorneys

U.S. Attorney's Office
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4915

Date: January 21, 2020

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 4

I.    BOTH PROVISIONS OF THE FEDERAL PROGRAM BRIBERY ACT
      CHARGED HERE ALREADY INCLUDE AN EXPRESS SCIENTER
      REQUIREMENT THAT COMPELS THE GOVERNMENT TO PROVE
      THAT A DEFENDANT ACTED "CORRUPTLY," WHICH  REQUIRES
      A SHOWING OF AN IMPROPER MOTIVE OR PURPOSE THAT
      INVOLVED CONSCIOUS WRONGDOING ......................................... 4

      A.    The Defendants' Argument Simply Ignores the Existing
            (and Wholly Sufficient) Scienter Requirements of
            § 666(a)(1)(B) and  § 666(a)(2) ................................................ 4

      B.    The Sand & Siffert Jury Instructions Used in this District Clearly
            Instruct that a Defendant Cannot be Convicted of Violating
            § 666(a)(1)(B) or § 666(a)(2) Unless the Government Proves
            Beyond a Reasonable Doubt that He or She Acted "Corruptly" .............. 11

      C.    Defendant FitzGerald's Two Arguments Based Upon the Legislative
            History of § 666 and the Rule of Lenity Are Also Meritless ................... 13

II.   BECAUSE THE STRUCTURE AND LANGUAGE OF THE UNLAWFUL
      FIREARMS POSSESSION STATUTE AND THE FPBA ARE COMPLETELY
      DIFFERENT, AND THE FPBA ALREADY INCLUDES AN EXPRESS
      SCIENTER REQUIREMENT, *REHAIF* HAS NO APPLICABILITY HERE ....... 20

III.  BECAUSE DEFENDANT PANGALLO'S SUPPLEMENTAL MOTION TO
      DISMISS COUNTS ONE AND FOUR (ECF # 118) RELIES ON THE SAME
      ARGUMENTS ADVANCED BY DEFENDANT FITZGERALD, IT
      THEREFORE FAILS AS WELL ....................................................... 26

CONCLUSION ........................................................................................ 27

The United States of America, by its undersigned counsel, states the following in response to defendant FitzGerald's Supplemental Motion to Dismiss Counts One, Two, and Three of the Indictment for Failure to State an Offense (ECF # 113) and defendant Pangallo's Supplemental Motion to Dismiss Counts One and Four for Failure to State an Offense (ECF # 118). The primary thrust of these motions is that the indictment should allege, and the government be required to prove at trial, that defendant FitzGerald knew that she was an agent of the Maryland Department of Human Resources (MDHR), and that defendant Pangallo similarly knew that she was an agent of MDHR. For the reasons set forth below, each motion is wholly without merit.

## INTRODUCTION

FitzGerald's and Pangallo's motions both seek to extract some benefit from the Supreme Court's decision last summer in *Rehaif v. United States*, ____ U.S. ____, 139 S. Ct. 2191, 2195 (2019), an unlawful firearms and ammunition possession case that charged the defendant with violations of 18 § 922(g). The Court in *Rehaif* was thus called upon to interpret the required elements of a completely different federal criminal statute that has neither a similar structure nor involves a similar subject matter to the Federal Program Bribery Act (FPBA), which is the basis for most of the offenses charged here. Nevertheless, defendants FitzGerald and Pangallo contend that *Rehaif* requires this court to infer the existence of a non-textual scienter element that applies to the first element of the charged violations of 18 U.S.C. § 666(a)(1)(B) and (a)(2): that at the various times alleged in the Count One, ¶ 4 of the indictment, defendant FitzGerald was an agent of the Maryland Department of Human Resources (MDHR), the Maryland Department of Information Technology (DoIT), and the Maryland state government.

*See* L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS: CRIMINAL, Instruction Nos. 27A-9 & 27A-16 (listing elements of the offenses charged in Counts Two, Three, and Four).

More specifically, defendant FitzGerald contends that the government should be required to allege and prove that she knew she was an agent of these entities and had authority to act on their behalf. ECF # 113, at 1-2, 6.[1] Defendant Pangallo separately contends that in the case of outside businessman like himself who is charged with bribing an agent of an government agency or publically-funded entity, the government should be required to allege and prove that he knew that person (FitzGerald, in this case) was an agent. ECF # 118 at 2-3. The defendants contend that absent such a requirement, the statute would permit conviction of persons who acted without any corrupt intent, or improper or bad purpose, and whose conduct was completely lawful. ECF # 113 at 71-10; ECF # 118 at 3-4. As shown below, however, this assertion is groundless, because each of the two provisions of § 666(a) already expressly require the government to plead and prove that each defendant acted "corruptly."

Significantly, neither defendant's motion contends that this supposed scienter requirement applicable to § 666(a)'s first element is traceable to any word that actually appears in the text of the statute. Nor do they claim that this requirement has been previously identified or recognized by any court anywhere in the existing case law interpreting the elements of § 666 – a statute that was first enacted in 1984, more than a third of a century ago. Rather, they contend that this non-textual scienter requirement

---

[1]  Defendant FitzGerald sometimes advances an even broader formulation:  that an agent "must have had authority to act on behalf of the state agency with regard to its funds." *Id.* at 1, 6, 14-15.

has only now belatedly emerged as a result of the Supreme Court's interpretation in *Rehaif* of the elements and structure of the wholly different and unrelated criminal statute relating to unlawful possession of a firearm or ammunition.

But what neither defendant expressly acknowledges or addresses, however, is that §§ 666(a)(1)(B) and 666(a)(2) each *already* includes an express scienter requirement that makes it necessary for the government to prove that both Ms. FitzGerald, in her capacity as an agent charged with soliciting or extorting wrongful benefits, and Mr. Pangallo, in his capacity as an outsider charged with offering and giving those benefits, acted "corruptly" in doing so.[2] The applicable jury instructions define "corruptly" as acting "with an improper motive or purpose to influence or reward [the recipient's] actions" that "involves conscious wrongdoing, or, as it has sometimes been expressed, a bad or evil state of mind." L. SAND, ET AL., Instruction Nos. 27A-13 & 27A-20.

Thus, contrary to what the defendants claim, the additional "scienter" requirement that Ms. FitzGerald and Mr. Pangallo seek to conjure out of thin air and apply to the "agent" element is therefore not necessary to ensure that § 666 adequately discriminates between those acting innocently and those acting with corrupt intent.[3] It

---

[2]   On a single occasion, Ms. FitzGerald's motion includes the word "corruptly" when quoting the statutory language, ECF # 113 at 2, but she subsequently excludes it from another partial quotation later on (ECF # 113 at 9). Mr. Pangallo's motion includes it once when referring to § 666(a)(1)(B), but not when referring to § 666(a)(2) later on the same page. ECF # 118 at 2. And neither defendant's motion includes *any* discussion of the relevance of the statute's use of the term "corruptly" to their argument about the necessity of inferring a separate *mens rea* requirement for the statute's "agent" element.

[3]   It is appropriate to place "scienter" in quotes when referring to FitzGerald's and Pangallo's proposed new requirement, because rather than dealing with scienter, what they are really trying to do is to expand the statutory definition of "agent" in § 666(d)(1)

has no grounding in the statute's actual text, as the defendants implicitly concede, and Congress's inclusion of specific scienter language at *three other places* in the statute strongly militates against any suggestion that the absence of a scienter requirement relating to the "agent" element was an inadvertent oversight. Finally, nothing in the Supreme Court's analysis of the elements of the unlawful firearms possession statute in *Rehaif* – which it held included an *express* scienter requirement as a result of the statute's use of the term "knowingly" that applied to the defendant's knowledge of his new status as an unlawful alien once he stopped attending an American college – warrants inferring and imposing an additional non-textual requirement to § 666(a)'s first element. Both defendants' motions should therefore be denied.

## ARGUMENT

I. **BOTH PROVISIONS OF THE FEDERAL PROGRAM BRIBERY ACT CHARGED HERE ALREADY INCLUDE AN EXPRESS SCIENTER REQUIREMENT THAT COMPELS THE GOVERNMENT TO PROVE THAT A DEFENDANT ACTED "CORRUPTLY," WHICH REQUIRES A SHOWING OF AN IMPROPER MOTIVE OR PURPOSE THAT INVOLVED CONSCIOUS WRONGDOING**

A. **The Defendants' Argument Simply Ignores the Existing (and Wholly Sufficient) Scienter Requirements of § 666(a)(1)(B) and § 666(a)(2).**

*Rehaif* involved a charge of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(5) by a young man from the United Arab Emirates who overstayed his student visa and whose immigration status therefore shifted from legal to unlawful. The issue before the Court in *Rehaif* was whether the use of "knowingly" in 18 U.S.C. §

---

in a way that they apparently think will make it more difficult to prove at trial. See discussion at page 16-19 *infra*.

924(a)(2)[4] – which is § 922(g)'s penalty provision – applied to both the "status" element

of the offense (i.e., whether the defendant fell into one of § 922(g)'s nine classes of

individuals prohibited from possessing a firearm) and its "possession" element, or

simply to the latter. The Court concluded that it applied to both, and explained its

underlying reasoning as follows:

> Applying the word "knowingly" to the defendant's status in § 922(g) helps
> to advance the purpose of scienter, for it helps to separate wrongful from
> innocent acts. Assuming compliance with ordinary licensing require-
> ments, the possession of a gun can be entirely innocent. [citation omitted]
> It is therefore the defendant's *status*, and not his conduct alone, that
> makes the difference. Without knowledge of that status, the defendant
> may well lack the intent needed to make his behavior wrongful. His
> behavior may instead be an innocent mistake to which criminal sanctions
> normally do not apply.

139 S. Ct. at 2197 (emphasis in the original).

*Rehaif*'s relevance to this case is therefore questionable on its face, because this

prosecution does not involve charges arising under the unlawful firearms possession

statute. Instead, Counts One through Four all relate to conspiracy to violate, or

substantive charges of violating, two provisions of the FPBA: 18 U.S.C. § 666(a)(1)(B)

(the statute's solicitation or extortion provision) and § 666(a)(2) (its bribe-paying

provision). Because *Rehaif* is a statutory interpretation case involving the interpretation

of a different and unrelated statute, it can have applicability here only if (a) the unlawful

firearms possession statute and the FPBA are similar in structure or language (which, as

we demonstrate below, they clearly are not) or if (b) the Court's concern in *Rehaif* that

---

[4]    Section 924(a)(2) provides that "Whoever knowingly violates subsection . . . (g)"
shall be subject to a fine and/or a maximum 10-year term of imprisonment.

an alternative statutory interpretation might allow the conviction of innocent persons acting with no culpable intent also has some basis here (which is likewise not the case).

Because "[t]he language of the statute" must be "the starting place in our inquiry," *Staples v. United* States, 511 U.S. 600, 605 (1994), we begin by quoting the full text of the two FPBA provisions that are relevant here. We start with § 666(a)(1)(B), the basis for the first prong of Count One's conspiracy charge (¶ 16(a)), as well as the substantive solicitation or extortion offenses charged in Counts Two and Three. That provision states that:

(a)     Whoever ...

(1)     being an agent of an organization, or of a State, local or tribal government, or any agency thereof [that receives in any one year period, payments or other benefits exceeding $10,000 under a federal program, § 666(b)] –

(B)     *corruptly solicits or demands* for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization government, or agency involving anything of value of $5,000 or more; [shall be guilty of a crime].

**Exhibit 1** (text of 18 U.S.C. § 666) (emphasis added).

Significantly, § 666(a)(1)(B) never uses the word "knowingly," the interpretation and application of which was the entire focus of the Court's decision in *Rehaif*. 139 S. Ct. at 2194 ("The question here concerns the scope of the word 'knowingly.'"). That is an initial important distinction between this case in *Rehaif*, where the use of "knowingly" in § 924(a)(2)'s penalty provision afforded a basis for the Court to find that it potentially modified all three elements of § 922(g). *Id.* at 2195 ("The term 'knowingly' in §

924(a)(2) modifies the verb 'violates and its direct object, which in this case is § 922(g).").

Certainly, Congress could easily have used "knowingly" in § 666(a)(1)(B) had it wished to do so. It could have been added after "Whoever" in the first line of § 666(a), or placed immediately before the words "being an agent" in § 666(a)(1). But the statute's drafters chose not to do that. And the decision by the statute's drafters not to use "knowingly" in either of these provisions was clearly a considered and deliberate choice, because they did find it useful and appropriate to include "knowingly" in the statute's embezzlement-theft provision, § 666(a)(1)(A) ("Whoever . . . embezzles, steals, obtains by fraud, or otherwise without authority *knowingly* converts . . . property") (emphasis added).[5]

The reason for this choice by the statute's drafters is clear. In contrast to the unlawful firearms possession statute, where absent the existence of a proscribed status, "the possession of a gun can be entirely innocent," *Rehaif*, 139 S. Ct. at 2197, it is, by definition, *never* innocent conduct for an agent of a government, agency, or publicly-funded organization to "corruptly solicit[] or demand[]" something of value in return for conducting business or transactions involving the expenditure of $5,000 or more. As the Supreme Court has pointed out, it has long been "as plain as a pikestaff" that accepting bribes and kickbacks to serve corrupt ends while in government service violates the law. *See Skilling v. United States*, 561 U.S. 358, 412 (2010), *quoting Williams v. United States*, 341 U.S. 97, 101 (1951).[6]

---

[5]    Section § 666(a)(1)(A) is not charged in this case.

[6]    This case accordingly falls squarely within the limited "exception" that FitzGerald purports to discern and which she addresses in her motion at page 8 n.5 (noting that the

7

For that reason, defendant FitzGerald's contention that, absent reading in an inferred scienter requirement to the statute's "agent" element, the statute would potentially sweep within its scope "entirely innocent" and "constitutionally protected" conduct such as paying a lobbyist to exert influence on a state agency (ECF # 113 at 10), is simply nonsense. When a lobbyist is properly hired to exercise influence on a state agency or a publicly-funded entity, there is neither a "corrupt[]" solicitation or demand by the agent, nor a "corrupt[]" offer, promise, or payment to an agent, and under those circumstances, neither § 666(a)(1)(B) nor § 666(a)(2) would apply by their own express terms. In contrast, if the lobbyist then passed along some of the funds he or she received to a state or covered entity agent to influence their determination, or the agent demanded of a firm with business before the state that they hire a particular lobbyist, whether out of an expectation that the lobbyist would share the payments with them or because of a personal relationship with the lobbyist, then the requirement of corrupt action would be met, and criminal liability under § 666(a)(2) and § 666(a)(1)(A) would clearly and properly exist.

Thus, the circumstances that gave rise to the Court's concern in *Rehaif* about ensuring fair notice of what constituted criminal activity under the unlawful firearms possession statute[7] are wholly absent here in light of the very different language and

---

presumption of scienter does not apply if the statute "criminalizes conduct that is *not otherwise innocent*," *quoting United States v. Cook*, 76 F.3d 596, 601-02 (4th Cir. 1996)).

[7]   One can certainly understand why the Supreme Court majority in *Rehaif* might have been concerned that a young student from the Middle East who originally entered this country lawfully might not be aware that his status changed immediately upon the termination of his academic enrollment. But there is no similar basis for concern with respect to a government agent who "corruptly" solicits or demands benefits in connection with the business of their agency or publicly-funded entity, or in regard to an

structure of the FPBA charges brought against the defendants. By mandating that the government must prove that an entity's agent acted "corruptly," the statute's drafters ensured that any defendant who is convicted under this provision must have been found by the jury to have acted with "a vicious will" (*id.* at 2196, *quoting* W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND) and with a clear understanding of "the wrongful nature of their act . . . ." *Id., quoting X-Citement Video*, 513 U.S. at 72 n.3.

As we shall discuss at more length in section II below, *Rehaif* is therefore readily distinguishable with regard to the first prong of Count One and to Counts Two and Three because its holding applies to a different criminal statute involving an activity (possession of a firearm or ammunition) that is fully lawful, unless it is done by persons with a particular status. *Id.* at 2197 ("In the provisions at issue here, the defendant's status is the 'crucial element' separating innocent from wrongful conduct."). But with regard to the charges based on § 666(a)(1)(B) in Counts One through Three, the "crucial element" separating innocent from wrongful conduct is whether the defendant acted "corruptly" in soliciting or extorting things of benefit for the purpose of influencing or rewarding him or her in connection with business or transactions of the government, agency, or federally-funded organization that involves $5,000 or more.

The same is true with regard to § 666(a)(2), the basis for Count Four (which is the subject of defendant Pangallo's motion, ECF # 118). That provision establishes that:

(a)     Whoever . . .

> (2)     *corruptly gives, offers, or agrees to give* anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or

---

outsider with business interests before an agency or publically-funded entity who "corruptly" offers or gives such benefits.

> series of transactions of such organization, government, or agency
> involving anything of value of $5,000 or more; [shall be guilty of a
> crime].

This provision likewise does not use the word "knowingly," because once again the work of distinguishing conscious wrongdoers from hapless innocents is accomplished by the requirement that the government must demonstrate that the defendant acted "corruptly."

Thus, contrary to defendant FitzGerald's contention that "reading a scienter requirement into the 'agent' element of the statute is required in order to avoid criminalizing lawful conduct" (ECF # 113, at 6 & 10-11; *see also* ECF # 118 at 2-3), there is no need here to infer or to conjure up *ex nihilo* ("out of nothing") a non-textual scienter requirement to ensure that the charged provisions of the FPBA do not sweep so broadly as to encompass persons acting without bad or improper intent. For § 666(a)(1)(B), the FPBA's solicitation or extortion provision, and § 666(a)(2), the FPBA's bribe-paying provision, both already contain an express scienter requirement. Each of these statutory provisions therefore explicitly requires that the government prove beyond a reasonable doubt that a defendant acted "corruptly," whether in soliciting or demanding things of value in return for their actions or in offering or giving things of value to induce particular actions.[8]

---

[8]   It is quite revealing that in the 18 pages of Ms. Fitzgerald's supplemental motion to dismiss, she quotes § 666(a)(1)(B)'s actual scienter requirement in passing only once (ECF # 113 at 2), and thereafter studiously ignores it. Indeed, at the beginning of the first full paragraph on page 9, defendant FitzGerald's motion purports to quote the key language from § 666(a)(1)(B), but she omits the word "corruptly" that appears immediately before the words "solicits or demands," which she does quote. Mr. Pangallo's shorter and admittedly derivative motion (ECF # 118) likewise makes only a single passing reference to the fact that "corruptly" appears in § 666(a)(1)(B), but does not do so in regard to § 666(a)(2).

**B. The Sand & Siffert Jury Instructions Used in this District Clearly Instruct that a Defendant Cannot be Convicted of Violating § 666(a)(1)(B) or § 666(a)(2) Unless the Government Proves Beyond a Reasonable Doubt that He or She Acted "Corruptly."**

Moreover, while pushing their claim that the charged provisions of the FPBA leave open the possibility of convicting defendants who acted without bad or improper intent, neither defendants FitzGerald nor Pangallo ever address the language of the standard jury instructions applicable to these provisions, which *expressly* require the government to prove that a defendant acted with such intent. The jury instructions applicable to both § 666(a)(1)(B) and § 666(a)(2) state squarely that a defendant cannot be found to have acted "corruptly," and therefore cannot be convicted under these provisions, unless the government proves beyond a reasonable doubt that the defendant acted with an "improper motive or purpose" to be influenced or rewarded that involved "conscious wrongdoing" or "a bad or evil state of mind." L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS: CRIMINAL, Instructions 27A-13 & 27A-20. **Exhibit 2** (texts of relevant Sand & Siffert instructions).

Thus, with regard to the first object of the conspiracy charge (Count One, ¶ 16(a)) and Counts Two and Three (which relate to § 666(a)(1)(B)), Instruction 27A-8 (The Indictment and the Statute) from L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS: CRIMINAL, begins by reading to the jury the relevant text of the FPBA's solicitation or extortion provision, including its language establishing that it applies only to agents of a covered entity who "corruptly solicit or demand" benefits for themselves or any other person. Next, Instruction 27A-9 (Elements of the Offense) requires the government to prove beyond a reasonable doubt that:

Fourth, that the defendant *acted corruptly* with the intent to be influenced or rewarded with respect to a transaction of [specify organization, government, or agency] . . . .

(Emphasis added.) Instruction 27A-13 then elaborates upon the meaning of "corruptly" as follows:

To act corruptly means simply to act voluntarily and intentionally *with an improper motive or purpose* to be influenced or rewarded. This involves *conscious wrongdoing*, or as it has sometimes been expressed, *a bad or evil state of mind*.

(Emphasis added).

Similarly, with regard to Count 4 (the subject of Pangallo's motion), Instruction 27A-15 begins by reading the language of § 666(a)(2), the FPBA's bribe-paying provision, to the jury, with its fundamental requirement that a defendant charged with this offense must "corruptly give[], offer[], or agree to give anything of value to any person . . . ." Instruction 27A-16 (Elements of the Offense) then likewise instructs the jury that to satisfy the fourth element of the offense, the government must demonstrate that the defendant "acted corruptly with the intent to influence or reward" the bribe's recipient. Finally, Instruction 27A-20 again instructs the jury that "To act corruptly means simply to act voluntarily and intentionally *with an improper motive or purpose* to influence or reward [the recipient's] actions" (emphasis added).

Accordingly, the text of the jury instructions that will be read to the jury at the end of defendants' trial readily establish that their stated concern that they could be convicted absent a showing that they acted with bad intent is wholly groundless.

### C. Defendant FitzGerald's Two Arguments Based Upon the Legislative History of § 666 and the Rule of Lenity Are Also Meritless.

Next, defendant FitzGerald contends that "the statute's legislative history supports th[e] conclusion" that "the 'agent' element [] require[s] the Government to allege and prove that the defendant knew the facts supporting her status as an 'agent' before she can be held liable under the statute." ECF # 113, at 12, *citing* S. REP. NO. 98-225, at 370 (1984). In fact, it does no such thing, as a review of the relevant portion of the Senate Report readily demonstrates. **Exhibit 3** (section of Senate Report relating to 18 U.S.C. § 666).[9]

18 U.S.C. § 666 was enacted as part of the massive crime bill passed in the fall of 1984, which included (as part of its more celebrated provisions) the Sentencing Reform Act that gave birth to the federal Sentencing Guidelines. The portion of the Senate Report that addresses § 666 is barely two pages in length. Most of that is devoted to explaining the need for the statute, which proceeded from the fact that the general theft of federal property statute (18 U.S.C. § 641) could not reach the theft or embezzlement of, or corruption relating to, federal funds once they were transferred to a state, local, or publicly-funded agency,

> because title has passed to the recipient before the property is stolen, or the funds are so commingled that the federal character of the funds cannot be shown. This situation gives rise to a serious gap in the law, since even though title to the monies may have passed, the federal government clearly retains a strong interest in assuring the integrity of such program funds.

S. Rep. No. 98-225, at 369 **(Exhibit 3)**.

---

[9] Of course, if it were true that the legislative history supports defendants' position, then it is more than passing strange that no defense attorney and no court appears to have noticed this in the 35 years since the legislative history was drafted and the statute enacted.

The section of the Senate Report summarizing the new statute's provisions consists of only nine sentences. With regard to the meaning or interpretation of key terms used in the statute, such as "agent," the Senate Report says just this:

> The terms 'agent,' 'organization,' government agency,' and 'local' are defined in subsection (D) and require no further explication.

*Id.* at 370. Significantly, FitzGerald's motion refrains from quoting this sentence – the only one in the legislative history that addresses the "agent" element of the statute that she has put at issue here.

The four sentences on page 12 of defendant FitzGerald's motion that do purport to discuss § 666's legislative history are nothing more than an exercise in smoke and mirrors. She begins with an unexceptional statement of the statute's purpose, then offers a naked and conclusory assertion that this legislative purpose "reflects congressional intent to punish those *who have authority to* and intentionally misuse federal dollars, but not an intent to impose strict liability." ECF #113 at 12 (emphasis added).[10] The very next sentence of her motion, which one would expect to provide some support for this assertion about the statute's "agent" element, is instead a *non sequitur* that veers off in a wholly different direction by noting that the statutory term "federal program" (which is not at issue in this motion) does not reach "every federal

---

[10]    FitzGerald's inclusion of the italicized language reflects her apparent belief that if you say something often enough, even without any actual legal support, you can make it so. In fact, the Supreme Court has repeatedly beaten back attempts to link liability under the FPBA directly to the spending of federal funds. This proceeds from the recognition that corrupt conduct by state or entity officials, even if it is not currently affecting federal funds, will likely do so in the longer term if it is not checked. See authorities cited at pages 17-18 *infra*, as well as our far more detailed discussion of this point in ECF # 65 at pages 48-58.

contract or disbursement of funds." *Id.*[11] FitzGerald's treatment of the legislative
history then wraps up by proclaiming that "Congress did not eliminate or otherwise
indicate an intent to eliminate the *mens rea* requirement or that *mens rea* should not
apply to every element of the offense." *Id.*

The best that can be said for this assertion is that defendant FitzGerald is half
right. Obviously, "Congress did not eliminate or otherwise indicate an intent to
eliminate the *mens rea* requirement," because *it expressly included no fewer than three
of them in the statute* – the terms "corruptly" in §§ 666(a)(1)(B) and § 666(a)(2) (which
FitzGerald either glosses over or outright ignores) and "knowingly" in § 666(a)(1)(A)
(which is not charged in this case). But *nothing* in the sparse legislative history supports
FitzGerald's further claim that it reflects an intent "that *mens rea* should [] apply to
every element of the offense." To the contrary, what the legislative history actually
states is that that "[t]he term 'agent' . . . [is] defined in subsection (D) and require[s] no
further explication." S. Rep. 98-225, at 370 **(Exhibit 3)**.

Given this express directive in the legislative history that the statutory term
"agent" means no less and no more than what appears in § 666(d)(1), let us review that
provision:

> (d)   (1)   the term "agent" means a person authorized to act on behalf
> of another person or a government and, in the case of an
> organization or government, includes a servant or employee,
> and a partner, director, officer, manager, and representative;
> . . .

---

[11]   By way of an example, the Senate Report goes on to explain that an agency's lawful
purchase of $10,000 in equipment from a supplier would not transform a garden-
variety embezzlement of $5,000 from the agency into a federal crime. S. REP. 98-225, at
370 **(Exhibit 3).**

There is thus nothing in here that "require[s] the Government to allege and prove the defendant knew the fact supporting her status as an 'agent' before she can be held liable," ECF # 113 at 12, much less that supports FitzGerald's additional claim that "an 'agent' is an individual authorized to act on behalf of a covered entity *with respect to that entity's funds.*" ECF # 113, at 14 (emphasis in the original). Indeed, the statute's list of persons qualifying as "agents" includes categories such as "servant," "employee," "director," and "representative" – individuals who in many cases would not be authorized to make decisions or take actions with regard to the expenditure of an entity's funds.

What is really going on here is that defendant FitzGerald is trying to recast and recycle an argument she and her co-defendants Maudlin and Pangallo previously advanced in FitzGerald's Motion to Dismiss Counts 1-3 (ECF # 55 at 14); Maudlin's Motion to Dismiss Counts 1, 4, & 6 (ECF # 59-1, at 4); Pangallo's Motion to Dismiss Counts 1 & 4 (ECF # 61 at 7) (insisting that the Government is required to show that defendant FitzGerald "had authority to control or administer DHR's resources"). But as we previously demonstrated at length in our First Consolidated Motions Opposition (ECF # 65 at 48-58, filed on November 30, 2018), this argument is based upon a line of authority, unique to the Fifth Circuit, that originated with a divided panel decision in *United States v. Phillips*, 219 F.3d 404, 411 (5th Cir. 2000) and that has not escaped subsequent criticism even within the Fifth Circuit itself.[12] Outside the Fifth Circuit,

---

[12] *See, e.g., Phillips*, 219 F.3d at 422 n.3 (Garza, J., dissenting) (noting that § 666(d)(1) "recognizes that an individual can affect agency funds despite a lack of power to authorize their direct disbursement"). Furthermore, in *United States v. Lipscomb*, 299 F.3d 303, 313 (5th Cir. 2002), one Fifth Circuit judge characterized *Phillips* as having "added some extra-textual teeth" to § 666(d)(1)'s definition of "agent," and strongly suggested that the *Phillips* dissent was actually more consistent with the

*Phillips*'s misguided holding has been squarely rejected or ignored by the First, Third,

Sixth, Eighth, and Eleventh Circuits – in short, by every other Court of Appeals that

appears to have considered the issue.[13]  And these other courts have done so with good

reason.  For *Phillips* goes beyond the definition of "agent" set out in the statute itself and

is inconsistent with a long line of other precedent interpreting the meaning of "agent"

under § 666, including the Supreme Court's subsequent decision in *Sabri v. United*

*States*, 541 U.S. 600, 604-05 (2004) (rejecting the defendant's contention that §

666(a)(2) was facially overbroad and therefore unconstitutional "because it fails to

require proof of any connection between a bribe or kickback and some federal money")

and its earlier ones in *Salinas v. United States*, 522 U.S. 56, 58 (1997) (in light of the

statute's "expansive, unqualified language," and because § 666(a)(1)(B) "was designed to

extend federal bribery prohibitions to bribes offered to state and local officials . . . [i]t

would be incongruous to restrict § 666" only to cases in which the bribe had a

---

"corruption focus" that the court had originally adopted in *United States v.*
*Westmoreland*, 841 F.2d 572, 577 (5th Cir. 1988) (which held that "any reference to
federal funds is conspicuously absent from the operative provisions, and it is clear that
Congress has cast a broad net to encompass local officials who may administer federal
funds, regardless of whether they actually do").  Another judge on the *Lipscomb* panel
expressed the view that "No discussion of the merits was required [in *Phillips*]; and the
ensuing discussion on potential constitutional issues is entirely dicta . . . ." *Id.* at 351
(Duhe, J., concurring in part and dissenting in part).  Similarly, a subsequent Fifth
Circuit panel in *United States v. Shoemaker*, 746 F.3d 614 (5th Cir. 2014), while
conceding the *Phillips* remained good law within the Fifth Circuit, pointed out that five
other circuits "have rejected the narrower approach of *Phillips*," and it further added
that "The *Phillips* majority's concern about avoiding constitutional doubts now itself
rests on doubtful foundations" owing to the Supreme Court's more recent decision in
*Sabri [v. United States,* 541 U.S. 600, 604-05 (2004)]." *Id.* at 622 n.7.

[13]   *See also, e.g.*, Comment, *Corruption Clarified: Defining the Reach of "Agent" in 18*
*USC § 666*, 80 U. Chi. L. Rev. 1391, 1408-1409 (Summer 2013) (contending that the
*Phillips* majority's "approach unjustifiably narrows the scope of § 666(d)(1)" [the
statutory definition of "agent"] and "contradicts Supreme Court precedent," including
*Sabri*).

demonstrated effect upon federal funds) and *Fischer v. United States*, 529 U.S. 667, 678 (2000) (finding that the language of § 666(b) "reveals Congress' expansive, unambiguous intent to ensure the integrity of organizations participating in federal assistance programs") & 681-82 (emphasizing that fraudulent acts by state, local, and agency officials that do not directly implicate federal funds "raise the risk that participating organizations will lack the resources requisite to provide the level and quality of [service] envisioned by the [federal] program").

Moreover, in now trying to recast her earlier bid to require the government to plead and prove that defendant FitzGerald had authority to manage the agency's funds (ECF # 55 at 14) as a "scienter" requirement, FitzGerald is contradicting the position she previously took in her earlier motion, as well as disregarding the basis for the Fifth Circuit's dubious decision in *Phillips*, which is the tainted source from which her entire argument ultimately springs. The *Phillips* court *never* suggested that its requirement that a defendant must be shown to have been "authorized to act on behalf of the [agency or publically-funded entity] with respect to its funds" (219 F.3d at 413) had anything to do with scienter or *mens rea*, or with ensuring that juries could distinguish between conscious wrongdoers acting with improper intent and hapless innocents. Rather, it viewed this construction as necessary because it believed that otherwise, § 666 would be overbroad and would exceed Congress's authority under the Spending Clause. *Id.* at 414-15. Defendant FitzGerald's previous motion urging the Court to import this requirement from the divided Fifth Circuit's panel decision in *Phillips* likewise contended that this was necessary to avoid creating constitutional issues under the Spending Clause, ECF # 55 at 15-16, not because it was needed to adequately distinguish between innocent-minded defendants and conscious wrongdoers. Defendant

FitzGerald's attempt to now refashion her previous *Phillips*-based Spending Clause argument into one now based upon scienter by draping it in *Rehaif*'s mantle could therefore hardly be more transparently contrived and artificial.

Finally, FitzGerald again dusts off her old standby argument (previously advanced in her Second Motion to Dismiss, ECF # 56 at 18-19) that if this Court finds it is ambiguous whether § 666(a)(1)(B) and § 666(a)(2) intended to apply a *mens rea* requirement to the statute's "agent" element, then it should do so under the rule of lenity. As we previously pointed out in ECF # 65 at 90-91, the Supreme Court has established that the rule of lenity becomes operative only where there is a "grievous ambiguity or uncertainty in the statute," *Chapman v. United States*, 500 U.S. 453, 463 (1991), and it is therefore "rarely applied." *United States v. Fernandez*, 722 F.3d 1, 24 n.14 (1st Cir. 2013). Because most statutes are ambiguous to at least some degree, "[t]he simple existence of some statutory ambiguity . . . is not sufficient to warrant application of that rule." *United States v. Muscarello*, 524 U.S. 125, 138 (1998). Because the Supreme Court "has never held that the rule of lenity automatically permits a defendant to win" whenever some ambiguity exists, such garden-variety ambiguity instead merely calls for the exercise of a court's normal skills at statutory interpretation. *Id.* at 139. The rule of lenity therefore only applies if, after seizing everything from which aid can be derived, the reviewing court can still make no more than a guess as to what Congress intended. *Id.* That is certainly not the case here. *See also United States v. McNair*, 605 F.3d 1152, 1192 (11th Cir. 2010) (finding nothing in § 666(a) or (c) that supported application of the rule of lenity).

Thus, contrary to what defendants FitzGerald (ECF # 113, at 7-9) and Pangallo (ECF # 118, at 3-4) suggest, the solicitation and extortion and bribe-paying provisions of

the FPBA already contain an express scienter requirement. It is placed at the point in each provision where Congress determined it was sensible and appropriate to place it – i.e., directly in front of, and therefore modifying, the series of verbs that define the actions proscribed by the statute (soliciting, demanding, or accepting, and giving, offering, and agreeing to give, anything of value). Because the provisions of the FPBA charged here already include a scienter requirement that ensures that a defendant will not be convicted under the statute unless he or she acted with an "improper motive or purpose" to be influenced or rewarded that involved "conscious wrongdoing" or "a bad or evil state of mind," Instructions 27A-13 & 27A-20, the specter of unjust convictions under these provisions of the FPBA that defendants attempt to conjure up (ECF # 113 at 10; ECF # 118 at 3-4) is wholly insubstantial.[14] And, as the next section demonstrates, nothing in *Rehaif* supports the defendants' arguments with regard to the interpretation of these provisions of § 666.

## II. BECAUSE THE STRUCTURE AND LANGUAGE OF THE UNLAWFUL FIREARMS POSSESSION STATUTE AND THE FPBA ARE COMPLETELY DIFFERENT, AND THE FPBA ALREADY INCLUDES AN EXPRESS SCIENTER REQUIREMENT, *REHAIF* HAS NO APPLICABILITY HERE

*Rehaif* presented the question of what culpable mental state or knowledge on the part of a defendant the government must prove in a prosecution under 18 U.S.C. § 922(g)(5), which prohibits (1) an alien (2) who is illegally or unlawfully in the United States (3) from possessing a firearm or ammunition that has moved in interstate

---

[14]   Rather like the Wizard of Oz, the defendants have generated great clouds of argumentation while effectively proclaiming, "Pay no attention to that express scienter provision in both sections 666(a)(1)(B) and 666(a)(2)!"

commerce. The defendant in *Rehaif* had entered the United States on a nonimmigrant student visa for the purpose of attending a university. He did poorly and was dismissed on academic grounds. When this occurred, university officials counseled him that his immigration status would be terminated unless he either secured admission to a different college or left the country. Rehaif did neither, which immediately terminated his lawful status. He was subsequently prosecuted under 18 U.S.C. § 922(g)(5)(A) based upon an occasion when he went to a shooting range and used two firearms.[15]

At his trial, Rehaif's counsel contended that the government had to prove not just that he was unlawfully or illegally in the United States, but that he knew that this was the case. The trial judge, in keeping with the previous understanding of the statute's elements, disagreed,[16] and the Eleventh Circuit affirmed his convictions.

The Supreme Court, however, concluded that the term "knowingly," which was used in the penalty provision of § 924(a)(2) but not in the main body of the statute at § 922(g), nevertheless modified that provision and applied both to the defendant's conduct (his possession of a firearm and ammunition) and to his awareness that he was in this country unlawfully. 139 S. Ct. at 2194. Because the trial court had not instructed

---

[15] As Justice Alito pointed out in his dissent, the government actually presented compelling evidence at Rehaif's trial that he was fully aware of his unlawful immigration status. *Id.* at 2201-2202. The record also included substantial evidence (which was not discussed in the majority opinion) of Rehaif's increasingly bizarre and ominous behavior in the weeks leading up to his arrest on December 6, 2015, which took place just four days after an attack by two ISIS-inspired individuals on a county employees holiday event in San Bernardino, California left 14 people dead and 22 injured. See https://en.wikipedia.org/wiki/2015_San_Bernardino_attack.

[16] *Id.* at 2202 (Alito, J., dissenting). *See also, e.g., United States v. Scott*, 564 F.3d 34, 39 (1st Cir. 2009) and *United States v. Langley*, 62 F.3d 602, 607 (4th Cir. 1995) (*en banc*) for the prior judicial interpretation of what § 922(g) required.

the jury to this effect, the Court reversed his conviction and remanded the case to the Eleventh Circuit for further proceedings – in particular, to determine whether the district court's error in the jury instructions was harmless. 139 S. Ct. at 2200.[17]

The Court's analysis in *Rehaif* proceeded in three steps. First, it noted that there is "a longstanding presumption" that "Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements *that criminalize otherwise innocent conduct.*'" *Id.* at 2195, *citing United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) (emphasis added). Second, the Court analyzed the statutory text and concluded that it supported the conclusion that the term "knowingly" used in § 924(a)(2) modified both of the non-jurisdictional elements of § 922(g) (i.e., status as an unlawful alien and possession of a firearm or ammunition). *Id.* at 2195-96. In doing so, the Court noted that "As 'a matter of ordinary English grammar,' we normally read the statutory term 'knowingly' as applying to *all the subsequently listed elements* of the crime.'" *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009) (emphasis added); *see also id.* at 652 (pointing out that the Court "ordinarily read[s] a phrase in a criminal statute with the word 'knowingly' as applying that word to each element"). Finally, the Court found that requiring the government to prove that Rehaif knew that he was an alien who was in the country unlawfully was

---

[17]    In a number of subsequent post-*Rehaif* decisions involving charges of unlawful possession of firearms, lower courts have indeed found that a district court's failure to instruct the jury consistently with the new requirement established by the Supreme Court was harmless error in light of the ample evidence of the defendant's knowledge of his or her status. *See, e.g., United States v. Burghardt*, 939 F.3d 397, 403-05 (1st Cir. 2019); *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019); *United States v. Benamor,* 937 F.3d 1182, 1188-89 (9th Cir. 2019); *United States v. Briscoe*, 2019 WL 5549165, at *3 (D. Kan. Oct. 28, 2019). Other courts have similarly declined to set aside prior guilty pleas on that basis. *See, e.g., Allen v. United States*, 2019 WL 6359164, at *4 (W.D.N.C. Nov. 27, 2019).

consistent with "scienter's importance in separating wrongful from innocent acts . . . ." 139 S. Ct. 2196.

When we apply the three considerations that influenced the Court's majority in *Rehaif* to this case, however, we find that none of them serves to advance the defendants' argument under the circumstances present here. To begin with, defendant FitzGerald's lengthy discussion (ECF # 113 at 7-9) of the presumption in favor of scienter is completely beside the point.[18] As discussed above, see pages 3-4 & 6-8 *supra*, the government does not assert that the provisions of § 666(a) charged here do not include a scienter requirement; they clearly and expressly do. Rather, it is the defendants who turn a blind eye to those express requirements in order to further their claim that yet another scienter requirement needs to be inferred out of nothing to modify the statute's "agent" element. See page 3, n.2 *supra*.

But as *Rehaif* and its predecessor decisions make clear, the presumption in favor of scienter can only be activated to infer a scienter requirement in the absence of an express statutory one where a failure to do so would leave the jury with no means of distinguishing between persons who are conscious wrongdoers and those who are hapless innocents. *See, e.g., Rehaif*, 139 S. Ct. at 2196-2197.

Second, the Court's construction of the unlawful firearms possession statute in *Rehaif* proceeded wholly from its finding that the word "knowingly" in § 924(a)(2)'s penalty provision should be read to precede and therefore modify all of the elements of § 922(g) except for its jurisdictional hook. Indeed, *Rehaif* expressly emphasized that in interpreting a criminal statute, language that imposes a scienter requirement applies

---

[18]   Indeed, it could appropriately be characterized as a "straw man" argument.

only to elements of the offense that *follow* the language specifying the defendant's required mental state. 139 S. Ct. at 2196 (citing and quoting *Flores-Figueroa,* 556 U.S. at 650 to establish that the term "knowingly" is normally read "as applying to all the *subsequently* listed elements of the crime"). Yet here, in both of the provisions in § 666(a) that form the basis for Counts One through Four, the statute's express scienter requirement is placed *after* the requirement that the defendant be an agent of a government, agency, or federally-funded organization, which the defendants claim should also be interpreted to have a scienter element. Thus, far from being consistent with *Rehaif,* the defendants' attempt here to conjure up out of nothing an additional "scienter" requirement beyond the one already expressly inserted into the statute at two different places by Congress and then to plunk that down before the words "being an agent" in § 666(a)(1) flatly contradicts the very principle of statutory analysis that the *Rehaif's* majority relied upon. *Id.* at 2195-96.

Finally, as we have already shown, see pages 6-8 & 11-12 *supra,* the structure of §§ 666(a)(1)(B) and 666(a)(2) and the jury instructions that apply to those statutory provisions already address, and are fully sufficient to secure, the need to "separat[e] wrongful from innocent acts . . . ." 139 S. Ct. 2196.

Given *Rehaif's* close focus upon the particular structure of the unlawful firearms possession statute, it should come as no surprise that defendants charged with violations of other statutes who have subsequently invoked *Rehaif* and argued that it applies to their cases have fared poorly. Thus, in *United States v. Ramos-Moran,* 2019 WL 4393670 (S.D. Cal. Sept. 13, 2019), the defendant, an alien, was charged with unlawfully attempting to enter the United States in violation of 8 U.S.C. § 1325(a)(1). The defendant argued that *Rehaif* required the government was required to prove that

he knew he was an alien. The Court easily rejected this claim. First, it pointed out that while *Rehaif* "concerned 'the scope of the word 'knowingly,'" the text of § 1325(a)(1) "did not incorporate a 'knowingly' requirement . . ." *Id.* at *4, *citing Rehaif*, 139 S. Ct. at 2194. Second, it pointed out    that the defendant's conduct would have been illegal regardless of whether he was an alien or a United States citizen, and his alien status "was therefore not the 'crucial element' separating wrongful from innocent conduct." *Id.* at *5.

Similarly, in *United States v. Thomas*, 2019 WL 5390567 (N.D. Ind. October 22, 2019), the Court rejected a defendant's attempt to set aside his prior guilty pleas by arguing that *Rehaif* required the government to prove that he acted "knowingly" with respect to the charges against him of conspiring to distribute 5 or more kilograms of cocaine (in violation of 21 U.S.C. § 846) and using a firearm during and in relation to a drug trafficking crime (in violation of 18 U.S.C. § 924(c)). The Court pointed out that "The 'prohibited status' that required a 'knowing' *mens rea* in *Rehaif* is not an issue with the charges awaiting sentencing for Mr. Thomas." *Id.* at *2.

It would always be a heavy lift to argue that a statutory interpretation case like *Rehaif* that involves not only a completely different criminal statute, but one that has nothing in common (either structurally or in terms of subject matter) with that charged here, mandates a radical revision of the long-standing and well-established understanding of the meaning of the FPBA and the existing precedents construing its required elements. But, perhaps concerned that they may have difficulty prevailing with the jury if the standard jury instructions relating to §§ 666(a)(1)(B) and 666(a)(2) are applied to the known facts here, the defendants appear desperate to find some way of rewriting these provisions and imposing additional requirements that have no support

in the statutory language, the established jury instructions, or the case law, leaving aside a couple of Fifth Circuit decisions that do not even command respect from all of the judges of that court itself. Such an act of forensic witchcraft is beyond the defendants' capabilities under the circumstances existing here.

## III. BECAUSE DEFENDANT PANGALLO'S SUPPLEMENTAL MOTION TO DISMISS COUNTS ONE AND FOUR (ECF # 118) RELIES ON THE SAME ARGUMENTS ADVANCED BY DEFENDANT FITZGERALD, IT THEREFORE FAILS AS WELL

Defendant Pangallo acknowledges that his motion seeks to piggyback upon the arguments advanced by defendant FitzGerald in her filing with respect to the Supreme Court's decision in *Rehaif*, ECF # 118, at 1-2. The Government (and, we suspect, the Court as well) will certainly not grudge him his straightforward and blessedly concise cry of "Me, too!" Pangallo contends that if the law requires a showing that FitzGerald had knowledge of her status as an "agent" for purposes of conviction under § 666(a), then it should likewise require a showing that he knew that she qualified as an agent under the statute. ECF # 118, at 2. As shown above, see pages 10-12 & 17-18 *supra*, the law requires no such showing as to FitzGerald herself, and Pangallo's contention therefore likewise fails.

But no unfair prejudice will result to Pangallo from the failure of his motion. If he did conduct his dealings with FitzGerald in ignorance of her status as an "agent" of MDHR, DoIT, and the Maryland state government, then he can certainly argue to the jury that his lack of understanding of her status indicates that the actions he took that benefitted her and her paramour Kenneth Coffland were not taken with corrupt intent. Thus, under the correct interpretation of the requirements of §§ 666(a)(1)(B) and 666(a)(2) presented above, Pangallo is in no way limited or prevented from arguing that

he was a hapless innocent, rather than someone who acted "corruptly," "with an improper motive or purpose," and whose actions reflected "conscious wrongdoing," as § 666(a)(2) requires.  L. SAND, ET AL., Instruction 27A-20 ("Defendant Acted Corruptly in Connection with Transaction").

## CONCLUSION

For the reasons set forth above, all of the arguments advanced by defendants FitzGerald and Pangallo in their respective motions (ECF # 113 and # 118) are without merit, and each must be be denied.

Respectfully Submitted,

/s/

By: _____

Jefferson M. Gray
Sean R. Delaney
Assistant U.S. Attorneys

United States Attorney's Office
36 S. Charles Street, 4th Floor
Baltimore, Maryland  21201
(410) 209-4915

Date:  January 21, 2019

## EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| 1 | Statutory Texts of 18 U.S.C. §§ 666(a)(1)(B) and 666(a)(2) |
| 2 | Standard Jury Instructions applicable to §§ 666(a)(1)(B) and 666(a)(2) from L. Sand, *et al.*, MODERN FEDERAL JURY INSTRUCTIONS: CRIMINAL |
| 3 | The Legislative History of 18 U.S.C. § 666, taken from S. REP. NO. 98-225 (1984), at 369-371 |