# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| **v.** | Criminal No. 17-506-TEJ |
| **ISABEL FITZGERALD, et al.**, | |
| *Defendants*. | |

### MS. FITZGERALD'S REPLY IN SUPPORT OF HER MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING MANAGEMENT BY ISABEL FITZGERALD AND/OR KEN COFFLAND

Isabel FitzGerald respectfully submits this reply in support of her motion *in limine* to exclude evidence regarding management by Isabel FitzGerald and/or Ken Coffland.  Mot. In Limine, ECF No. 88.  In its opposition, the government acknowledges that it intends to proffer extensive evidence that Ms. FitzGerald "deliberately created what witnesses often characterized as a stress-filled working environment on these contracts in order to provide herself with more leverage over ACS/Xerox, and in particular to encourage it to knuckle under to her demands that it transfer away large portions of its work to TCC."  Gov.'s Opp. at 6, ECF No. 150.

Ms. FitzGerald's motion *in limine* must be granted and this evidence must be excluded. First, this evidence is clearly 404(b) evidence, it is not intrinsic to the bribery and extortion charges, and the government failed to provide notice under Federal Rule of Evidence 404(b).  Second, the proffered evidence does not support the inferences the government seeks to argue in contending that the evidence is relevant.  Merely by way of example, Ms. FitzGerald will demonstrate below that the evidence entirely contradicts the government's claims that *seven* ACS/Xerox executives were removed by Ms. FitzGerald or left because of stress she created.

Third, even if otherwise admissible, this evidence must be excluded under Federal Rule of Evidence 403.  It would cause undue delay and confusion to carry out mini-trials as to each personnel-related action in order for Ms. FitzGerald to establish that she was not the decisionmaker for the action in question, if she was the decisionmaker why she acted (for example, as part of her duties to administer the contract), and/or to refute that she "deliberately" created stress in the workplace.  Moreover, such evidence is unduly prejudicial as it would invite the jury to convict her not on the basis of wrongdoing but because they do not like her character as a "threatening, demeaning, and sometimes verbally abusive" manager.  Gov.'s Opp. at 1, ECF No. 150.

**ARGUMENT**

I.     **THE EVIDENCE RELATED TO THE WORK ENVIRONMENT IS INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 404(b).**

    **A. The government's deadline to provide notice of Rule 404(b) evidence was December 2017 and at no time in the previous two and a half years has the government given notice it intended to introduce any 404(b) evidence.**

Federal Rule of Evidence 404(b) excludes evidence of crimes, wrongs, or other acts to prove a person's character in order to show that the person acted in accordance with the character on a particular occasion. Under the rule, there are limited permitted uses of crimes, wrongs, or other acts, but those limited uses are not applicable here. More importantly, even if they were, the government was required to provide notice of any 404(b) evidence it intended to offer at trial *in or around December 2017. See* Ex. 1 (Executed Discovery Agreement dated November 16, 2017) at ¶ 3 (requiring the government within 20 days of the letter to "provide notice of the existence of alleged other crimes, wrongs or acts committed [by the defendants] pursuant to Rule 404(b) of the Federal Rules of Evidence, along with copies of all physical and documentary evidence believed by the government to fall within the ambit of Rule 404(b) which the government intends to introduce at trial in its case-in-chief.").

The defense relied on this agreement and, just to be certain, on July 9, 2018, the defense wrote to the government to confirm that the government had not noticed any 404(b) evidence and that it was the defense's understanding that the government did not intend to introduce any 404(b) evidence at trial. *See* Ex. 2 (Letter from A. Schmitt to S. Delaney dated July 9, 2018). That letter explicitly stated that if that understanding was not correct, the government was asked to "please notify us immediately so that we can discuss any 404(b) issues and, if necessary, litigate any relevant issues." *Id*. The government did not provide any response to the contrary.

Nor can the government claim that any of this evidence has only more recently come into

its possession. All of the evidence cited in the government's opposition is contained in the grand jury transcripts and documents gathered in the government's investigation over the course of 2013 to 2016. Similarly, the government cannot claim that because the trial is still several months away, there is "no harm, no foul." The defense has been preparing for this case since 2017. The defendants prepared their defense based on the indictment and then the Superseding Indictment (filed in December 2018), and relied on the fact that the government was not intending to proffer evidence of other crimes, wrongs or other acts because it had not noticed any such evidence.

Moreover, the defense timely filed their motions *in limine* in this case *in January 2019* just days before the government notified the defense that it had inadvertently failed to produce more than 90,000 documents, which necessitated a continuance. As a result, the government had all of the defendants' motions *in limine* for a full *fourteen months* before it filed its oppositions. Yet, having seen from the defense's motions filed in January 2019 that the defense was seeking to exclude evidence related to the workplace environment (as well as evidence regarding the alleged "romantic relationship" (ECF No. 85) and the alleged violation of state ethics law (ECF No. 86)), the government still did not provide any 404(b) notice. Instead, the defense learned for the first time just three months ago when the government finally filed its oppositions that the government was seeking to rely on evidence on all of these 404(b) issues. The evidence must be excluded. [1]

---

[1] Even if the Court were otherwise inclined to say "no harm, no foul" and determine that the defense still has time in advance of trial to adjust course and prepare to rebut all of this 404(b) evidence, we respectfully submit that the Court should not do so in light of the pandemic when defense counsel cannot travel or meet with witnesses or do other necessary investigation and preparation, as they could have had the government given timely notice.

**B. Even if the government had timely noticed this evidence pursuant to Fed. R. Evid. 404(b), it cannot meet the standard for admissibility under 404(b).**

The Fourth Circuit has articulated a four-prong test for assessing the admissibility of prior-acts evidence under Rule 404(b): (1) the prior-act evidence must be relevant to an issue other than character; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) as required by Rule 403 its probative value must not be substantially outweighed by its prejudicial nature. *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997) (citing *e.g.*, *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988)). The government cannot satisfy this test with respect to the workplace evidence.

**1. The prior-acts evidence must be relevant to an issue other than character.**

For some of the proffered workplace evidence, the government might satisfy the first prong of this test. That is, some of this evidence might be relevant to the witness's state of mind, for example, rather than only relevant to character. The government cannot, however, satisfy the remaining three prongs—and it has not even attempted to do so.

**2. The prior-acts evidence must be necessary to prove an element of the crime charged.**

Ms. FitzGerald is charged with conspiracy in violation of 18 U.S.C. § 372, bribery in violation of 18 U.S.C. § 666(a)(1)(B) and (a)(2), making false statements in violation of 18 U.S.C. § 1001, and extortion under color of official right in violation of 18 U.S.C. § 1951(a). This Court will be very familiar with the elements of each of these crimes. Clearly evidence that Ms. FitzGerald and/or Mr. Coffland created a stressful work environment, were rude to subordinates, or engaged in any of the other management and workplace-related conduct the government alleges is not necessary to prove any of the elements of any of these offenses. *See, e.g.*, *United States v. McBride*, 676 F.3d 385, 399 (4th Cir. 2012) (district court erred in admitting evidence under Rule

404(b) where evidence was "unrelated to the crimes charged, and, thus, in no case could be considered 'necessary' to prove the element of [defendant's] intent.").

**3. The prior-acts evidence must be reliable.**

The third prong of the Fourth Circuit's test for admissibility under 404(b) is reliability. Ms. FitzGerald will not take the time to go through each and every one of the bits of evidence proffered in the government's opposition, but will take on some of the government's most provocative "evidence" in order to demonstrate to the Court why none of this information is reliable or admissible.

The government argues on page 7 and at footnote 4 of its opposition that "FitzGerald demanded that employees be removed from the contracts she supervised so frequently that jurors apprised of this pattern may well find that these terminations owed less to the individual employees' flawed performance than to FitzGerald's desire to assert her dominance over the workplace." The government thereafter identifies seven ACS/XEROX executives it claims were removed by Ms. FitzGerald or who left as a direct result of her actions. These claims are demonstrably false.[2]

First, the government claims that **Elizabeth Durkee** was "removed at FitzGerald's request" in August 2011. Gov.'s Opp. at 7, n.4, ECF No. 150. In fact, Ms. Durkee was removed from the account in March 2011 by ACS/Xerox leadership, but ACS/Xerox then falsely told Ms. Durkee that the client (DHR) had requested the removal. As Ms. FitzGerald wrote to the Executive Vice President/COO, Account Executive, and Project Manager at ACS/Xerox at the time:

> While I find this whole situation unfortunate and I believe it could have been avoided entirely if your executive team had acted quickly to address the real issue— management style—not allowed it to escalate out of control, supported the account

---

[22] The government also claims that Ms. FitzGerald "once removed TCC from its contract with the state[.]" Gov.'s Opp. at 8. The government has not provided any evidence to support this assertion.

executive, and had not acted as an enabler.  I nonetheless said I would support whatever course of action was deemed necessary by ACS to correct it.

Imagine, however, my surprise when I got a 'lovely' note from Ms. Durkee indicating she was told "the client had demanded my immediate removal due to performance issues that happened under my watch." . . .

You asked me if I would write a letter asking for the removal of Ms. Durkee.  I said no that would not be my first course of action.  I said, and I quote, "what I want is for ACS to handle its own personnel problems.  It is not a DHR responsibility.  If I end up having to write a letter asking for the removal of someone, I will be asking for the removal of several people."

Ex. 3 at 2 (Email from I. FitzGerald to J. Doherty, J. Pascucci, M. Davis, dated March 19, 2011).

The government also claims that **Joe Pascucci** was "removed at FitzGerald's request." Gov.'s Opp. at 7, n.4, ECF No. 150.  Again, this is contradicted by the evidence.  In fact, Kenyatta Powers, the Acting CIO at the time, insisted on Mr. Pascucci's removal from the account.  No doubt the government will claim that Ms. FitzGerald somehow pulled the strings or directed Ms. Powers to make that demand.  But the government cannot support such a claim because the evidence includes, just for example, a conversation from an ACS/Xerox executive relaying to another ACS/Xerox executive his conversation with Ms. Powers herself.

Had a very good conversation with Kenyatta this afternoon.  She really wants Thurman and would "owe me one" if I can make it happen.  She understands the conflict and hopes we can work it out.  She does not want Vishnu and wouldn't accept him if proposed.  She really likes him but there are issues with others and his relationships with them.  *Most important to her is getting Joe [Pascucci] out of there. She says they've (read her) lost their trust with him.*

Ex. 4 at 2 (Email from M. Davis to J. Doherty, dated Dec. 13, 2011) (emphasis added); *see also* Ex. 5 at 2 (Email from J. Doherty to M. Davis and M. Humenik, dated Oct. 14, 2011) ("Guys: Kenyatta is also looking for us to make a move on Joe P—so we'll need to increase the pace for bringing someone new on as Program Executive."); Ex. 6 at 3 (Email from Kenyatta Powers to Joe Doherty, dated Dec. 9, 2011) ("As you know, I have been working with Mike Davis with

6

identifying candidates to replace Joe Pascucci as the DHR Account Manager. . . . I am requesting that ACS replace Joe Pascucci with Bill Thurman as DHR's Account Manager.").

And the government claims that **Michael Davis** was "removed at FitzGerald's request." Gov.'s Opp. at 7, n.4, ECF No. 150.  Again the evidence belies this claim.  In fact, Mr. Davis was moved off the account because of an ACS/Xerox reorganization and even the ACS/Xerox VP with responsibility for the DHR account had trouble internally with the reorganization.  *See* Ex. 7 at 3 (Email from Nancy Collins to David Bywater, dated Jan. 5, 2012, indicating that she hopes her ACS/Xerox colleague, David Amoriell, will agree to keep Mr. Davis on the DHR account for at least a period of time given the importance of the client account.).

Next, the government claims that **Bill Thurman** "resigned due to stress-related health issues."  Gov.'s Opp. at 7, n.4, ECF No. 150.  In fact, the documents reveal that Mr. Thurman first threated to resign in March 2012 because he was over-worked and ACS/Xerox had too many positions unfilled and was desperately trying to hire in order to get him the support he needed on the account.  This is reflected in an internal ACS/Xerox email chain in which the executives are frantically trying to get positions filled to support Mr. Thurman.  There is no mention of Mr. Thurman having issues with DHR or with Ms. FitzGerald.

> Jim,
>
> Confidentially, Bill [Thurman] resigned today because he had reached a breaking point—I talked him into retracting his resignation and think I was successful, however, our sense of urgency and need to get talent into this program at the senior level is not (sic) even further heightened—Bill can't and won't continue if we are not able to get these positions filled.
>
> I've cc:ed Tim on this note as well as he is going to be reaching out to Bill and also looking at his "rolodex" to see how he can help.
>
> Thanks,
> Nancy

Ex. 8 at 3 (Email from Nancy Collins to Jim Heidrich, dated March 9, 2012).

And the following year when Mr. Thurman did leave, again the contemporaneous evidence does not suggest it had anything to do with DHR, much less with Ms. FitzGerald. As Mr. Pascucci wrote to Ms. FitzGerald in March 2013:

> I met Bill [Thurman] for lunch on Tuesday, 3/26/2013. His last day with Xerox is Friday, 3/29/2013.
>
> …
>
> He did not say anything bad about DHR. . . .
>
> He had allot (sic) to say about Nancy [Collins], Tim [McGinn], and Xerox. He does not trust the current management. They will throw anyone under the bus to protect themselves. He decided he had enough and left. (it is clear to me that Jimmy [Chandler] does not want to be there)

Ex. 9 at 2 (Email from J. Pascucci to I. FitzGerald, dated March 27, 2013).

The government also claims that **Tim McGinn** was "removed at FitzGerald's request." Gov.'s Opp. at 7, n.4, ECF No. 150. While the government relies on hearsay testimony from Mr. Chandler that McGinn hated DHR and hated Ms. FitzGerald (see Gov.'s Opp. at 8, n.5, ECF No. 150), the evidence suggests that perhaps Mr. McGinn's real issues were with his supervisor, Nancy Collins. *See, e.g.*, Ex. 10 at 2 (Email from Tim McGinn to Jose Garcia, dated September 12, 2013) ("I am silent in background because I know Nancy [Collins] hates me and don't want to taint anything that comes out of this call but I won't leave until we have something to give to Cap that is positive."). However, Ms. Collins told her own superior, David Bywater, that Ms. FitzGerald had directed that McGinn be removed. *See* Ex. 11 (Email from Nancy Collins to David Bywater, dated Feb. 13, 2013).

The government claims that **Jimmy Chandler** resigned after being forced to hire Mr. Coffland as hosting director. Gov.'s Opp. at 7, n.4, ECF No. 150. But in his grand jury testimony,

Mr. Chandler says that he left because he had a job offer and did not want to be on-site in Maryland Monday through Friday because he lived in Memphis with his family and he wanted to be able to travel on Mondays rather than be on-site. Ms. Powers was the one who insisted that he be on-site five days a week. *See* Ex. 12 at 3 (Email from Kenyatta Powers to Tim McGinn, dated Jan. 13, 2013) ("In addition, although there is some level of flexibility, per the contract the Account Executive on this account shall be on-site 5 days a week. It is exceptionally important that he not miss any key meetings especially due of (sic) travel."). Moreover, while Mr. Chandler does say in his grand jury testimony that he hated working at DHR, he does not say anything about leaving because he had to hire Mr. Coffland.

The government claims that **Sherry McCray** was "removed at FitzGerald's request." Gov.'s Opp. at 7, n.4, ECF No. 150. In fact, Kenyatta Powers and Secretary Ted Dallas decided to remove Ms. McCray from the DHR account after they determined that Ms. McCray had misled DHR regarding its failure to timely pay its subcontractors. *See* Ex. 13 (Letter from Kenyatta Powers, Chief Information Officer, DHR, to Sherry McCray, Director, Xerox State and Local, dated Feb. 15, 2014).

Finally, and again just by way of example as to the inaccuracy and unreliability of the government's "evidence," the government cites evidence from its interview of David Hofeling on February 4, 2016. Gov.'s Opp. at 6, n.3. Mr. Hofeling apparently claimed in that interview that during weekly CIO meetings when he was the ACS/Xerox hosting director, Ms. FitzGerald was frequently in attendance and would run the meeting and that these meetings were referred to by others as the "weekly beat down." *Id.* Mr. Hofeling was the hosting director from June 2012 to January 2013, though the government says he took that position in March 2012. *Id.* A review of the CIO meeting minutes from mid-April 2012 (which demonstrate that Hofeling was not yet the

9

hosting director) to January 2013 reflect that for the twenty-one meetings for which the minutes have been produced in discovery, Ms. FitzGerald was present at only *one* such meeting. *See* Ex. 14 (excerpt of relevant meeting minutes showing attendees for twenty-one meetings between April 19, 2012 and January 10, 2013).

As the above recitation of facts conclusively demonstrates, the government's proffered evidence with respect to the workplace environment at DHR when Ms. FitzGerald was there simply does not support its contention as to why this evidence is supposedly probative. Accordingly, it fails the third prong of the test for 404(b) evidence.

### 4. As required by Rule 403, the probative value of the prior-acts evidence must not be substantially outweighed by its prejudicial nature.

Rule 403, which is incorporated into the Rule 404(b) analysis as the fourth prong of the test for admissibility, gives a court the power to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." *United States v. Hernandez*, 975 F.2d 1035, 1041 (4th 1992) (citing *United States v. Greenwood,* 796 F.2d 49, 53 (4th Cir. 1986)).  And with respect to 404(b) evidence, the court must exclude it if its probative value is outweighed by undue prejudice. *See McBride*, 676 F.3d at 4040 (district court erred in admitting evidence under 404(b) where "evidence was inherently prejudicial in the absence of any plausible probative value").  The Court should exclude this proffered evidence under Rule 403 both because any probative value the "stressful workplace" evidence has is substantially outweighed by its prejudicial value and because of the other concerns identified by Rule 403, such as wasting time and confusing the issues.

The government's evidence about how employees and contractors perceived Ms. FitzGerald's or Mr. Coffland's management style, what tone Ms. FitzGerald used in emails, or

whether people found her to be an intimidating and coercive manager versus an empowering and mentoring manager is not probative of the issues that will be before the jury. Moreover, belaboring these facts would result in undue prejudice. Most if not all of the jurors will have worked and had supervisors—some they liked, others they did not. Painting Ms. FitzGerald as "threatening, demeaning, and sometimes verbally abusive" will pose a significant risk that the jury will base its decision on an emotional response, rather than on an objective analysis of the evidence.

Moreover, as the discussion just of the seven examples addressed in the preceding section amply demonstrates, allowing the government to admit this workplace evidence will inevitably cause confusion and undue delay, and waste time. The defense will need to mount defenses to each of these personnel actions—many of which did not involve Ms. FitzGerald at all—and conduct mini-HR trials within this bribery and extortion trial. That is far afield of the issues and runs afoul of Rule 403.

For all of these reasons, this evidence fails the necessary four-prong test for Rule 404(b) evidence and must be excluded.

## II.   THE GOVERNMENT CANNOT END RUN FEDERAL RULE 404(B) BY ARGUING THAT THE "STRESSFUL WORKPLACE" EVIDENCE IS "INTRINSIC" TO THE BRIBERY AND EXTORTION CHARGES.

Finally, the government cannot prevail by arguing that the workplace evidence is "intrinsic." The government in this case has apparently decided to unilaterally write Federal Rule of Evidence 404(b) out of the rules of evidence entirely and, instead, simply argue that *any* evidence it wishes to introduce of whatever type or topic is "intrinsic" to the charged offenses. It has argued that proffered evidence of an alleged romantic affair between Ms. FitzGerald and Mr. Coffland is evidence intrinsic to the bribery and extortion charges. *See* Gov.'s Resp. in Opp. to Defs. Mots. Regarding the Romantic Relationship Between Def. Coffland and Def. FitzGerald, ECF No. 148. And it has argued that alleged violations of a wholly unrelated and uncharged state

11

ethics law—despite obviously being a "crime, wrong, or other act" under Rule 404(b)—is not subject to 404(b) and is, instead, evidence intrinsic to the bribery and extortion charges. *See* Gov.'s Resp. in Opp. to Defs. Mot. In Limine Regarding Def. FitzGerald's Known Violation of State Ethics Laws, ECF No. 146. And now it argues that proffered evidence that Ms. FitzGerald was "threatening, demeaning, and sometimes verbally abusive" and "deliberately created what witnesses often characterized as a stress-filled working environment" is evidence "intrinsic" to the bribery and extortion charges. Gov's Opp. at 1, 6, ECF No. 150.

A review of the caselaw cited by the government itself reveals that the government's argument must be rejected. As the government notes, other acts evidence is "intrinsic" to the charged offense if the other acts are: "[1] inextricably intertwined or [2] both acts are part of a single criminal episode or [3] the other acts were necessary preliminaries to the crime charged." *See* Gov't Opp. at 14 (citing *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996)).

Obviously, the government's unconnected testimony about how people felt in meetings with Ms. FitzGerald or emails implying a rude or dismissive tone as well as claims that Ms. FitzGerald had people removed from their positions is not "intrinsic" under that standard. Each of these circumstances is fact-specific and unique, and none of them are "inextricably intertwined" with the crimes charged, nor are they "necessary preliminaries." Clearly a certain management style is not a prerequisite to committing bribery and extortion.

The government's attempt to end run Rule 404(b) this way must be rejected. *See*, *e.g.*, *United States v. Ebert*, 178 F.3d 1287 (4th Cir. 1999) ("However, this ['intrinsic' evidence exception] is a narrow exception . . . which only allows admission of bad acts that form the basic factual setting of the crime or some other 'integral part of the crime charged,' . . . as necessary to give 'a coherent picture of the facts' of the crime charged[.] The exception is *not* a broad license

to introduce gratuitous evidence about a defendant's prior bad acts that are unlinked in time and space to the crime charged under the guise of providing the jury with assorted 'background information.'"), *opinion amended on denial of reh'g*, 188 F.3d 504 (4th Cir. 1999).

## CONCLUSION

The government wishes to make the workplace environment and Ms. FitzGerald's and Mr. Coffland's management styles and decisions a significant part of its case.  But this evidence is only admissible, if at all, under Rule 404(b).  The government was obligated to provide notice of 404(b) evidence in December 2017 and it did not, nor did it at any time in the two-and-a-half years since. In fact, even after seeing all of the defense's motions *in limine* raising various evidentiary issues in January 2019, the government chose not to notice any 404(b) evidence, even out of an abundance of caution.  Instead, fourteen months later in March 2020, the government argues that this random collection of workplace grievances, personnel actions, and contract management decisions is somehow all "intrinsic" to the bribery and extortion charges.  It is not.

This evidence fails at least three of the four prongs of the test for admitting 404(b) evidence. It is not necessary to prove an element of the offense; it is not reliable evidence probative of any relevant issue, any probative value is substantially outweighed by the undue prejudice it would cause the defense, and it would result in significant delay, confusion, and wasted time.  Ms. FitzGerald's motion *in limine* should be granted.

Date:   June 19, 2020                          Respectfully submitted,

                                               */s/ Barry J. Pollack*
                                               Barry J. Pollack
                                               Jessica Arden Ettinger
                                               ROBBINS RUSSELL ENGLERT ORSECK
                                               UNTEREINER & SAUBER LLP
                                               2000 K Street NW, 4th Floor
                                               Washington, D.C. 20006
                                               Telephone: (202) 775 4500
                                               Fax: (202) 775 4510
                                               bpollack@robbinsrussell.com
                                               jettinger@robbinsrussell.com

                                               Addy R. Schmitt
                                               MILLER & CHEVALIER CHARTERED
                                               900 Sixteenth Street NW
                                               Washington, D.C. 20006
                                               Telephone: (202) 626 5837
                                               Fax: (202) 626 5801
                                               aschmitt@milchev.com

                                               *Counsel for Ms. FitzGerald*

**CERTIFICATE OF SERVICE**

On this 19th day of June 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Maryland by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.


Respectfully submitted,

*/s/ Addy R. Schmitt*
Addy R. Schmitt


*Counsel for Ms. FitzGerald*